# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN HILLS, et. al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | No. 13-1076 |
| v. | : | |
| BOROUGH OF COLWYN, et. | : | |
| al., | : | |
| Defendants. | : | |

**October 17, 2013**                                          **Anita B. Brody, J.**

## MEMORANDUM

Plaintiffs Bryan Hills ("Hills"), Aaron Ockimey, Sr. ("Ockimey"), and John Cizmarik ("Cizmarik") (collectively "plaintiffs") bring suit against their employer, Defendant Borough of Colwyn ("Borough" or "Colwyn"); the President of the Colwyn Borough Council, Tonette Pray ("Pray"), in her official and individual capacity; and nine additional members of the Colwyn Borough Council[1] (collectively "Council Members"), in their official and individual capacities. Plaintiffs allege that defendants discriminated against them in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.*; and 42 U.S.C. § 1981 ("§ 1981"), brought via 42 U.S.C. § 1983 ("§ 1983").[2] Additionally, Plaintiff Cizmarik alleges that defendants discriminated

---

[1] Defendant Council Members are Marguerite Thomas, Patricia Williams, Martha D. VanAuken, Julius Coles, Richard Booker, Robert Moore, Victoria Walden, Lisa Mujahid, and Paul Mueser.

[2] Plaintiffs bring all of their § 1981 claims via § 1983. These claims are referred to as "§ 1981 claims."

against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*[3]

Three motions are currently pending before the court. First, Defendant Mueser moves to dismiss plaintiffs' PHRA and § 1981 claims against him in his individual capacity.[4] Second, Defendants Borough, Pray, and the eight remaining Council Members (collectively "Colwyn Defendants") move to dismiss: (1) plaintiffs' § 1981 claims against all defendants, (2) plaintiffs' PHRA claims against Defendants Pray and Council Members in their individual capacities, and (3) Cizmarik's PHRA, Title VII, and ADA claims against the Borough. Third, Colwyn Defendants move to strike punitive damages as to plaintiffs' § 1981 and PHRA claims. I will grant in part and deny in part each of these three motions for the reasons discussed below.

## I. BACKGROUND[5]

Hills and Cizmarik are white male Borough employees. Ockimey is an African-American Borough employee. Pray, an African-American Council Member, has been president of the council since on or about November 2007. Plaintiffs allege that Pray made employment decisions based on race and enlisted other Council Members to terminate employees on the same basis. Pray has said that Borough employment should "be like UPS—all brown" and, regarding Borough employees ("employees"), "If it's white, it ain't right." Plaintiffs contend that, between June 2008 and the present, Pray and Borough Council took adverse employment actions against them as a result of this race-based campaign.

---

[3] Federal question jurisdiction lies over plaintiffs' Title VII, ADA, and § 1981 claims under 28 U.S.C. § 1331, and supplemental jurisdiction lies over plaintiffs' PHRA claims under 28 U.S.C. § 1367.

[4] Defendants Paul Mueser, Patrick J. Heller, Danny Betzala, and Katharine A. Brennan originally filed this motion; however, Defendants Heller, Betzala and Brennan were voluntarily dismissed from the case on April 15, 2013. *See* ECF No. 23.

[5] For the purposes of the motions to dismiss, facts are stated in the light most favorable to plaintiffs. See *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

### A. **Plaintiff Hills**

In 1998, Hills began working for Colwyn Borough as Sergeant-in-charge. In 2001, he became Chief of Police. Beginning in June 2008 and continuing to the present, Pray has withheld his overtime pay, his healthcare reimbursement and his pay for unused vacation time. Pray did this by reducing, delaying, intercepting, or failing to deliver checks. Hills further contends that Pray referred to the Police Department as a "White Boys' Club," stated that "Black communities should be policed by black officers and run by black supervisors," and stated to employees, including Ockimey, that she and Borough Council wanted to remove Hills from his position because of his race. About August 2009, Pray also met with African-American members of the Colwyn Police force and made racially-charged derogatory remarks about Hills. Pray instructed African-American Officers Parham, Robinson, and Reed, as well as Ockimey, to scrutinize Hills' work and to report information to her that would assist her in terminating Hills' employment.

Starting in 2009, Borough Council approved several disciplinary actions against Hills, including suspending him without pay in March 2009 and June 2009, and terminating him in September 2009. Subsequent arbitrations overturned all three of these disciplinary actions as unwarranted. The March 2009 action suspended Hills for two days for alleged insubordination for not following the Borough Council's directive to avoid scheduling officers to work overtime. In September 2009, an arbitrator overturned the March 2009 suspension as unwarranted and not for just cause. The Council again suspended Hills—this time for ten days—in June 2009 for "'neglect or violation of [his] duties' and 'inefficiency[,] neglect, disobedience of orders and/or conduct unbecoming an officer.'" The dispute again centered around the Council's directive to avoid scheduling officers for overtime. In March 2010, a different arbitrator overturned the June 2009 suspension and concluded that "faced with limited manpower" Hills had "managed the

police department admirably." Hills claims that the Borough Council "deliberately created an impossible situation for [him] by failing to adequately budget the manpower necessary to conduct police functions,…in order to build an unfair case against [him]." A part of this effort "was council members' decision to penalize Hills for unplanned overtime which was necessary to meet the Borough's policing requirements."

On September 22, 2009, at a meeting broadcast on local television news, the Borough Council terminated Hills without notice to either Hills or the Mayor of Colwyn. In May 2011, a third arbitrator overturned Hills' termination and ordered Hills' reinstatement with back-pay, finding that many of the Borough's rationales for Hills' termination were the same issues raised to justify Hills' previous suspensions. The Borough appealed the final arbitration decision to the Delaware County Court of Common Pleas, which affirmed the arbitration award. The Borough then appealed the affirmation to the Commonwealth Court, which affirmed the lower court's decision. Since the decision, Borough Council has failed to pay Hills' back-pay, and has not yet reinstated him. Borough Council advised Hills that he must undergo psychological and medical testing before returning to work. Finally, around the time of the issuance of a notice of right to sue to Hills, Borough Council ceased paying Hills' medical insurance premium.

**B. Plaintiff Ockimey**

The Borough hired Ockimey as a Colwyn Highway Department laborer in January 2008. In late 2008, the Borough promoted him to foreman—a post previously held by Cizmarik. Around the time of Ockimey's promotion, Pray told Ockimey that the Borough Council was "going after" the white police department, including Hills. Pray also referred to African-American police officers who supported Hills as "Uncle Toms." Pray told Ockimey that if he supported her efforts he would be "fine."

In early 2009, Ockimey observed Pray and Hills in some kind of dispute. Pray demanded that Ockimey write an inaccurate statement about what happened and dictated its contents. Ockimey wrote the statement, because he feared that both he and his son (also a Borough employee) would lose their jobs. Subsequently, during Hills' first arbitration, Ockimey testified truthfully about the dispute, violating Pray's instructions to testify in accordance with his previous written statement. After Ockimey testified, Pray and the Council targeted him by not allowing him to make up time on the weekends for work he missed due to his wife's cancer treatments, not paying him for overtime he worked, and not properly reimbursing him for medical expenses correctly submitted.

### C. Plaintiff Cizmarik

The Borough hired Cizmarik as a Colwyn Highway Department highwayman in 1986 and later promoted him to foreman. Cizmarik states that he is disabled within the meaning of the ADA, because he has suffered multiple organ failures, received a double organ transplant in 2009, and takes life-sustaining medication. Cizmarik was injured on the job in August 2008, but the Borough did not allow him to return to work until August 2009, although his physician cleared him for work in June 2009. When Cizmarik returned to work, Pray instructed one of Cizmarik's co-workers to "work him until he drops or quits." She also referred to Cizmarik as "the disabled white guy." Furthermore, after Cizmarik's return, the Borough demoted him from foreman to laborer and docked his pay for work-related injuries. Subsequent to the issuance of a notice of right to sue to Cizmarik, Borough Council ceased paying for Cizmarik's health insurance coverage without notice to Cizmarik.

## II.  LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

### A.  § 1981 Claims

Plaintiffs allege that Defendant Borough and Defendants Pray and Council Members, in their individual capacities, violated plaintiffs' rights under 42 U.S.C. § 1981 by discriminating against them on the basis of race. Plaintiffs bring their § 1981 claims via § 1983 because § 1981 does not provide a cause of action against state actors. Section 1981 claims against state actors must therefore be brought through the cause of action provided by § 1983.[6] *McGovern v. City of*

---

[6] In their Complaint, plaintiffs bring all of their § 1981 claims against both the Borough and individual Council Members via § 1983. Plaintiffs' Response, however, now appears to indicate that plaintiffs actually intended to bring their claims against the individual Council Members directly through § 1981, without reference to § 1983. To the extent plaintiffs wish to change their pleadings with respect to this issue, they must amend their Complaint.

*Philadelphia*, 554 F.3d 114, 120-121 (3d Cir. 2009) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)). Defendants argue that plaintiffs' § 1981, via § 1983 claims should be dismissed because they are time-barred under the two-year statute of limitations applied to § 1983 claims. Indeed, § 1983 claims are typically subject to the statute of limitations for state tort personal injury claims, which is two years in Pennsylvania. *See DiBartolo v. City of Philadelphia*, No. 99-CV-1734, 2000 WL 217746, at *4 (E.D. Pa. Feb. 15, 2000) (citing *Wilson v. Garcia,* 471 U.S. 261, 266–67 (1985)); 42 Pa. Cons. Stat. Ann. § 5524 (statute of limitations for personal injury in Pennsylvania is two years). Plaintiffs contest, however, that the four-year statute of limitations provided by 28 U.S.C. § 1658 applies to their § 1981 claims.

In 1990, Congress enacted 28 U.S.C. § 1658, which is a catch-all statute of limitations providing that a "civil action arising under an Act of Congress enacted after" Dec. 1, 1990 is subject to a four-year statute of limitations. Although the original version of § 1981 was enacted by the Civil Rights Act of 1866, the statute was amended by the Civil Rights Act of 1991. The parties do not dispute that plaintiffs' § 1981 claims—which involve harassing and discriminatory conduct that occurred post-contract formation—were not available under the original § 1981 that existed prior to the 1991 Amendments. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372-373 (2004) (noting that under *Patterson v. McLean Credit Union,* 491 U.S. 164 (1989), the original § 1981 "statutory right 'to make and enforce contracts' did not protect against harassing conduct that occurred after the formation of the contract. Under that holding, it is clear that petitioners' hostile work environment, wrongful discharge, and refusal to transfer claims do not state violations of the original version of § 1981"). Rather, the 1991 Amendments extended the protections of § 1981 to post-contract formation conduct, and it is this type of conduct by defendants that plaintiffs claim has violated their rights. Unlike § 1981, however, Congress did

not amend § 1983 after 1990. The central question is thus whether plaintiffs' § 1981 actions "arise under" the Civil Rights Act of 1991—which postdates § 1658's catch-all statute of limitations—even though plaintiffs bring those claims via § 1983.

In *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), the Supreme Court considered the question of whether a § 1981 claim against a private actor should be subject to the two-year statute of limitations that had traditionally applied to § 1981 claims, or whether the four-year statute of limitations created by § 1658 should control. The Court first considered whether plaintiff's specific § 1981 claims existed prior to 1990, or whether the Civil Rights Act of 1991 enabled the claims. The Court found that the claims—like those raised by plaintiffs in this case—were post-formation contract claims that had not existed prior to 1990, and thus alleged violations of the statute as amended in 1991. Second, the Court analyzed whether these claims "arose under" the 1991 statute within the meaning of § 1658, such that the four-year statute of limitations should apply.

The *Jones* Court held that "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was *made possible* by a post-1990 enactment." 541 U.S. 369, 382 (emphasis added). The Court rejected a narrow reading of § 1658 applied by the Courts of Appeals that "restrict[ed] § 1658 to cases in which the plaintiff's cause of action is *based solely* on a post-1990 statute that establishes a new cause of action without reference to preexisting law." *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 381(emphasis added) (internal quotation marks omitted). The *Jones* Court thus held that the four-year statute of limitations provided by § 1658 applied to the plaintiff's § 1981 claims because they were "made possible" by the Civil Rights Act of 1991.

While clearly instructive, the *Jones* opinion did not directly address the issue before this court in that it dealt with a § 1981 claim against a private actor, not a § 1981 claim against a state actor brought via § 1983. In *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113 (2005), however, the Supreme Court indicated in *dicta* that the four-year statute of limitations would also seem to apply to a post-1990 claim against a state actor brought via § 1983:

> The statute of limitations for a § 1983 claim is generally the applicable state-law period for personal-injury torts…. It may be, however, that this limitations period does not apply to respondent's § 1983 claim. In 1990, Congress enacted 28 U.S.C. § 1658(a)…, which provides a 4-year, catchall limitations period applicable to 'civil action[s] arising under an Act of Congress enacted after' December 1, 1990. In *Jones…,* we held that this 4-year limitations period applies to all claims 'made possible by a post-1990 [congressional] enactment.'…. Since the claim here rests upon violation of the post-1990 [Telecommunications Act], § 1658 would seem to apply.

544 U.S. 113, 123, n.5 (citations omitted).[7]

Although the Supreme Court's holdings have not been conclusive, the Eleventh Circuit decided the exact issue before this court in *Baker v. Birmingham Bd. of Educ.,* 531 F.3d 1336 (11th Cir. 2008). The *Baker* court held that the four-year statute of limitations provided by § 1658 applies to § 1981 claims that were made possible by the Civil Rights Act of 1991, but

---

[7] Defendants point out that there is some language in *Abrams* that appears to undercut this *dicta*, as well as plaintiffs' position. The *Abrams* Court noted that "our decision in *Wilson,*…expressly rejected the proposition that the limitations period for a § 1983 claim depends on the nature of the underlying right being asserted. …We concluded instead that 42 U.S.C. § 1988 is 'a directive to select, in each State, the one most appropriate statute of limitations for *all* § 1983 claims.'" 544 U.S. 113, 124 (citation omitted). When taken in context, however, the Supreme Court's statement can be read to mean that cases brought via § 1983 do not import their statute of limitations from the underlying substantive rights-creating statute. Indeed, in *Abrams*, the court found that the 30-day statute of limitations in the Telecommunications Act (TCA) could not be imported into a § 1983 action to enforce the rights created by the TCA against state actors.

 However, the statute of limitations provided by §1658 does not depend on the *substantive* nature of the underlying right asserted, and is the same—four years—regardless of the underlying right. Rather it depends on the date of origin of that right and whether the claim was made possible by an Act of Congress enacted after 1990. In light of the *dicta* implying that § 1658 would potentially apply to the §1983 claim in *Abrams*, it is logical to conclude that § 1658 provides an exception to the general rule that all § 1983 claims are subject to the same state personal injury limitations period. *See Williams v. Rowan Univ.,* No. 10-6542, 2012 WL 813161, at *6, n.6 (D.N.J. Mar. 9, 2012) (reconciling the potentially conflicting statements in *Abrams* by concluding that § 1658 provides an exception to the general rule that state law limitations periods apply to §1983 claims).

nonetheless must be brought via § 1983. In so holding, the *Baker* court relied upon the Supreme Court's decision in *Jones* and found the Supreme Court's *dicta* in *Abrams* to be "instructive." 531 F.3d 1336, 1338, n. 2. The Eleventh Circuit is the only Court of Appeals thus far to directly decide (in a precedential opinion)[8] the question of whether § 1658's four-year statute of limitations should be applied to § 1981 claims brought through § 1983 against state actors.

By and large, district courts have followed the reasoning applied by the Eleventh Circuit in *Baker*, and concluded that *Jones* compels application of the four-year statute of limitations to § 1981 claims brought via § 1983, as long as those § 1981 claims were made possible by the post-1990 Amendments to § 1981. *See Mveng-Whitted v. Virginia State Univ.*, 927 F. Supp. 2d 275, 278 (E.D. Va. 2013) (citing five district court cases and concluding that "[t]he weight of authority around the country supports the Eleventh Circuit's reasoning"); *Williams v. Rowan Univ.*, No. 10-6542, 2012 WL 813161, at *6 (D.N.J. Mar. 9, 2012) (citing six district court cases that held § 1658's four-year statute of limitations applicable to § 1981 claims brought through § 1983); *Clayton v. Pennsylvania Dep't of Pub. Welfare ex. rel. Richman*, No. 4:CV 05-0768, 2007 WL 575677 at *15 (M.D. Pa. Feb. 20, 2007) (applying § 1658's four-year statute of limitations to a § 1981 via § 1983 claim, as a result of the Supreme Court's decision in *Jones*), *aff'd sub nom. Clayton v. Pennsylvania Dep't of Welfare*, 304 F. App'x 104 (3d Cir. 2008). *But see Barroso v. New Jersey Transit Corp.,* No. 07-3978, 2011 WL 111577, at *4 (D.N.J. Jan. 13,

---

[8] Notably, however, in *N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010)—a non-precedential Third Circuit opinion—the court applied a two-year statute of limitations to a § 1981 via § 1983 claim, but did not discuss its reasoning behind the decision to apply the two-year § 1983 statute of limitations instead of the four-year statute of limitations imposed by § 1658. Interestingly, in a recent opinion from the District of New Jersey, the district court declined to follow *N'Jai*, explaining that "the Third Circuit does not appear to have been presented with the argument that Section 1658 may apply to a Section 1981 based Section 1983 claim." *Williams v. Rowan Univ.*, No. 10-6542, 2012 WL 813161, at *5, n.5 (D.N.J. Mar. 9, 2012). Instead, the *Williams* Court found the Eleventh Circuit's reasoning in *Baker* to be persuasive, and concluded that "the Supreme Court's decision in *Jones*...compels this Court to conclude that Plaintiff's Section 1981 based Section 1983 claim is subject to Section 1658's four year statute of limitations." *Id.* at * 5. I similarly decline to give *N'Jai* much weight, given the Court did not analyze the issue before us: whether § 1658 provides the controlling statute of limitations for this type of case.

2011) (finding that the § 1658 four-year statute of limitations does not apply to "a section 1983 action that may encompass rights guaranteed by section 1981").

I similarly find the *Baker* Court's reading of *Jones* to be persuasive. The *Jones* Court's broad reading of § 1658—that claims "made possible" by statutes enacted after 1990 should be subject to the four-year statute of limitations—compels the conclusion that § 1658 provides the applicable limitations period, because plaintiffs' § 1981 claims were not available prior to 1990 and were only "made possible" by the Civil Rights Act of 1991. Plaintiffs' claims are thus not time-barred, because the four-year statute of limitations applies.

Defendants also move to dismiss plaintiffs' § 1981 claims on the grounds that plaintiffs have failed to state a claim for municipal or individual liability under § 1983. Plaintiffs, however, have alleged sufficient factual content that, if true, would support a reasonable inference that defendants are liable for the alleged misconduct. Therefore, I will deny defendants' motions to dismiss plaintiffs' § 1981 claims.[9]

## B. PHRA Claims Against Council Members in their Individual Capacities

Plaintiffs claim that all Council Members, in their individual capacities, violated their rights under the Pennsylvania Human Relations Act. Council Members, except Pray, move to dismiss plaintiffs' PHRA claims against them, in their individual capacities, on the ground that plaintiffs failed to name them in their administrative complaints before the U.S. Equal

---

[9] It is unclear whether plaintiffs intend to sue Defendant Council Members in their *official* capacities under § 1981, in addition to directly suing the Borough itself under § 1981. The Supreme Court has stated that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell, supra,* local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985). Furthermore, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)) (internal quotation marks omitted). Thus, to the extent plaintiffs' Complaint brings official capacity claims against the Defendant Council Members, I will dismiss these official capacity claims as duplicative of the § 1981 claims directly against the Borough. *See, e.g., Allen v. Sch. Dist. of Philadelphia*, No. 05-5523, 2006 WL 1997373, at *3 (E.D. Pa. July 12, 2006); *M.C. v. Pavlovich,* No. 4:07-CV-2060, 2008 WL 2944886, at *4 (M.D. Pa. July 25, 2008); *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006).

Employment Opportunity Commission ("EEOC"), and thus failed to exhaust their administrative remedies.

Plaintiffs sue defendants under Section 955(e) of the PHRA, which provides for individual liability. *Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996).[10] Section 955(e) forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice ..." 43 Pa. Con. Stat. § 955(e). Before filing suit under the PHRA, a plaintiff must first exhaust all administrative remedies by filing a charge of discrimination (also referred to as an administrative complaint) with the Pennsylvania Human Relations Commission ("PHRC") or EEOC. *See Kunwar v. Simco,* 135 F. Supp. 2d 649, 653 (E.D. Pa. 2001); 43 Pa. Cons. Stat. Ann. § 962.[11] This administrative "[c]omplaint must name the individual(s) alleged to have violated the PHRA." *DuPont v. Slippery Rock Univ. of Pennsylvania*, No. 2:11-CV-1435, 2012 WL 94548, at *3 (W.D. Pa. Jan. 11, 2012) (citing 43 Pa.C.S. § 959(a)). "Courts have found that the individuals do not have to be named in the caption of the case and that just mentioning the individuals in the body of the Complaint gives the individuals the requisite notice so that judicial relief may be sought under the PHRA." *Id.* (citation omitted). "The purpose of requiring an aggrieved party to resort first to the EEOC is twofold: to give notice to the charged party and

---

[10] The Third Circuit held that Section 955(e) provides for individual liability because it explicitly prohibits unlawful action by "any person" or "employee." *Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996). The language in Section 955(e) is distinct from that in Title VII and Section 955(a) of the PHRA, which prohibit unlawful action by an "employer," but not employees. The Third Circuit thus found that, unlike Section 955(e), both Title VII and Section 955(a) do not provide for individual liability because the definition of an "employer" in these two acts cannot be construed to include "employees." 91 F.3d 542, 552.

[11] Similar to the PHRA, Title VII requires exhaustion of administrative remedies by filing a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1). Courts thus consistently apply Title VII jurisprudence on exhaustion of administrative remedies to determine whether plaintiffs have exhausted remedies under the PHRA. *See, e.g., Carter-Herman v. City of Philadelphia*, No. 95-4030, 1995 WL 764574, at *3 (E.D. Pa. Dec. 21, 1995) (applying Title VII jurisprudence to PHRA exhaustion claim because "courts have uniformly held that the PHRA should be interpreted consistent with Title VII" (internal quotation marks omitted)); *see also Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3d Cir. 1996) ("Generally, the PHRA is applied in accordance with Title VII.").

provide an avenue for voluntary compliance without resort to litigation." *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977).

Defendants argue that plaintiffs did not exhaust administrative remedies as to individual Council Members, other than Pray,[12] because they neither named these individuals nor even mentioned them in their EEOC charges.[13]  Generally, if a plaintiff does not name a defendant in his/her administrative charge, he/she is precluded from later bringing an action against that defendant in court. *See Schafer v. Board of Public Educ.,* 903 F.2d 243, 251 (3d Cir.1990).

The Third Circuit, however, has articulated an exception to this named respondent rule. In *Glus v. G. C. Murphy Co.*, 562 F.2d 880 (3d Cir. 1977), the Third Circuit set forth a four-factor test to determine whether a plaintiff could be deemed to have exhausted administrative remedies and proceed with a lawsuit against a defendant, despite failing to name that defendant in his/her administrative complaint. In *Schafer v. Board of Public Educ.,* 903 F.2d 243, 252 (3d Cir.1990), the Third Circuit refined the *Glus* test and articulated a simplified version of the exception to the named respondent rule. *See Dixon v. Philadelphia Hous. Auth.*, 43 F. Supp. 2d 543, 546 (E.D. Pa. 1999) (noting that the *Schafer* "articulation of the exception is a shorthand version of the four-part test stated in *Glus*"). The *Schafer* Court held that a case against an

---

[12] Pray was discussed in detail in each of the three EEOC charges.

[13] "As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered . . . ."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (citations omitted) (internal quotation marks omitted).  Thus, a court may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).  Further, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Because the plaintiffs' three EEOC charges attached to Colwyn Defendants' Motion to Dismiss as Exhibit A meet this definition, I may consider them for the purposes of deciding the motion to dismiss. *See, e.g., Davies v. Polyscience, Inc.,* 126 F. Supp. 2d 391, 393, n.3 (E.D. Pa. 2001).

unnamed party may proceed "when the unnamed party received notice and when there is a shared commonality of interest with the named party." *Schafer,* 903 F.2d 243, 252.

Plaintiffs contend that this court should apply the *Schafer* exception to allow their case to proceed. Specifically, plaintiffs argue that there is a commonality of interest between the Borough and the Council Members in their individual capacities, and that there is a factual question of actual notice that should be postponed until after discovery. Plaintiffs present no facts, however, that indicate that the individual Borough Council Members received actual notice of the EEOC complaint, as required by *Schafer*. Even if Council Members *were aware* of the existence of this complaint against the Borough, the complaint would not necessarily serve to put them on notice that their personal conduct was being challenged or that they could be sued in their *individual* capacities.

The difference between an official capacity suit and an individual capacity suit is not a trivial one. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity….It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). As a result, "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id*.  In contrast, personal capacity suits impose personal liability upon an individual, and "an award of damages against an official in his personal capacity can be executed only against the official's personal assets." *Id*.  Because of this difference, "[a] defendant being sued in his or her personal capacity should be given adequate notice that his or her personal assets are at stake." *Melo v. Hafer*, 912 F.2d 628, 636, n.7 (3d Cir. 1990) *aff'd*, 502 U.S. 21 (1991). Thus, while plaintiffs' EEOC charges serve to notify defendants that the *Borough* might be sued, and that they—as Borough Council Members—might be sued in their

*official capacities*, these charges do not necessarily provide notice to these individuals that they might be sued in their *personal capacities* and thus, personally liable for damages.

Multiple district courts in the Eastern District of Pennsylvania have similarly considered the "notice" element of the *Schafer* exception, and concluded that when a plaintiff fails to name individual defendants in the body of the EEOC complaint, these defendants have not been put on notice that they could be sued in their *individual* capacities—even when they were *aware* of the complaint's existence. In *McInerney v. Moyer Lumber & Hardware, Inc.,* 244 F. Supp. 2d 393, 399 (E.D. Pa. 2002), for instance, the court considered whether Defendant Moyer—an owner of a hardware store—received notice that he might be sued in his individual capacity. Although Defendant Moyer's Hardware Store was named in the EEOC complaint, the defendant himself was not listed in the body of the complaint. The court concluded that although Defendant Moyer "certainly" had notice his company was under investigation for discriminatory conduct and that he may be subject to suit in his *official* capacity as the owner of the business,

> there is nothing in the administrative complaints to suggest that McInerney sought to charge Defendant Moyer in his *individual* capacity. Unlike [other] Defendants … Moyer is not named anywhere in the administrative complaints, and there are no allegations therein that his personal conduct contravened the law. Accordingly, Defendant Moyer could not have had any notice that he would be subject to suit in his individual capacity.

244 F. Supp. 2d 393, 399. Because of this lack of notice, the court dismissed all PHRA claims against the defendant in his individual capacity. *See also Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 464 (E.D. Pa. 2013) (finding that although fitness center owner shared a commonality of interest with the center, owner "was not named in the administrative complaint, and … none of the allegations in it provided him with 'notice that he would be subject to suit in his individual capacity'"); *Lightcap-Steele v. KidsPeace Hosp., Inc.,* No. 05-02578, 2006 WL 1147476, at *6, n.6 (E.D. Pa. Apr. 27, 2006) (finding that even though an unnamed defendant

fired the plaintiff, and "the EEOC file indicates [she] was aware generally of the EEOC charge,…[defendant] was [not] put on notice of any charge against her in her individual capacity").

Similarly, in *DuPont v. Slippery Rock Univ. of Pennsylvania*, No. 2:11-CV-1435, 2012 WL 94548, at *4 (W.D. Pa. Jan. 11, 2012), the plaintiff argued (as plaintiffs do in this case) that "there [wa]s a question of fact as to whether the individual Defendants were aware of the charges brought in the EEOC Complaint." Despite this contention, the court concluded that "even if all of the factual questions are resolved in Plaintiff's favor, the individual Defendants did not receive notice under… *Schafer*." *Id.* at *4. The *DuPont* Court found that "[a]lthough Defendants Smith and Williams were aware of the Complaint (or should have been aware of the Complaint) because of their positions as President and Provost…, they did not have notice that they could be sued in their *individual* capacities." *Id.* Even though the EEOC Complaint mentioned "that Plaintiff was being discriminated against by Slippery Rock and its officials," the court did not find this statement provided sufficient notice of an individual capacity claim. *Id.*

Plaintiffs nowhere allege in the pleadings that unnamed Defendant Council Members had notice that they were subject to liability in their individual capacities. Plaintiffs' three EEOC charges do not identify any of the individual defendants (except Pray), nor do they allege that any of these individuals aided or abetted Pray, nor do they even reference individual activities of these defendants. Rather, the charges attribute discriminatory behavior in most instances to "Borough Council, specifically Tonette Pray" or just to Tonette Pray. Cizmarik's charge does not even directly reference the "Borough Council," but rather attributes discriminatory activities to Pray or to the "Borough," without reference to the Council. Colwyn Mot. Dismiss, Ex. A, at 3. Ockimey's charge references one action directly taken by the Borough Council, and states that

the "Borough Council furloughed me," but otherwise his references are to actions or statements made by Tonette Pray or the Borough more generally. *Id*. at 4. Finally, Hills' charge also attributes discriminatory actions mostly to "Borough Council, specifically Tonette Pray," with the exception of one instance in which he directly attributes action to the Council, stating that the "Borough Council used a pretext of progressive discipline for performance issues…." *Id*. at 2.

Defendants argue that "Plaintiffs could have identified individual Defendants, as they did with Pray, in the body of the Charge." Colwyn Mot. Dismiss at 11. Indeed, not only do the charges fail to reference individual council members by name, but they also do not even reference the Borough Council "members" more generally. In sum, these EEOC charges simply do not put individual defendants, other than Pray, on notice that they would be subject to suit in their individual, rather than official, capacities.

In addition to this lack of notice, the second element of *Schafer*—commonality of interest—is also not satisfied. Defendants argue that "[t]he interests of any one Council member is not necessarily equivalent to that of the Borough as the Council member is a member of the legislative body, has no managerial authority, and is not an employee of the Borough." Colwyn Mot. Dismiss at 11. While the facts alleged in the complaint indicate that the council may have exercised some managerial authority, the interests of the council members as *individuals* are not "so similar" to those of the Borough "that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include [them] in the [administrative] proceedings." *Glus,* 562 F.2d 880, 888; *see, e.g. Meyers v. California Univ. of Pennsylvania*, No. 2:12-CV-1258, 2013 WL 795059, at *13 (W.D. Pa. Mar. 4, 2013) (finding that "[t]he interests in obtaining voluntary conciliation of CalU (a public university part of the PaSSHE) and Harrison (an individual) are not so similar that it was unnecessary to specifically include Harrison in the

administrative process"); *Urey v. E. Hempfield Twp.*, No. 08-5346, 2009 WL 561664, at *4 (E.D. Pa. Mar. 4, 2009) ("[I]t cannot be said that the police department and its chief share a commonality of interests sufficient to make the *Glus* exception apply."); *Hajzus v. Peters Twp. Sch. Dist.*, No. 2:06CV1401, 2007 WL 917082, at *3 (W.D. Pa. Mar. 23, 2007) (finding that a school district and individual board members lacked commonality of interest: "These individuals are not the School District and have not had any previous opportunity to resolve any disputes against them personally"), *on reconsideration*, 2007 WL 1113361 (W.D. Pa. Apr. 12, 2007). *But see Lowenstein,* 820 F. Supp. 2d 639, 646 ("Since [employer] SMMC can be held liable for its employees' discriminatory conduct, SMMC and [employee] Shanks shared a common interest in defending against plaintiff's allegations.").

As discussed above, the fact that plaintiffs sue defendants in their individual capacities is a critical consideration. Defendant Council Members—*not* the Borough—will be personally liable if plaintiffs' aiding and abetting claims succeed on the merits. An individual council member, who may be personally liable for his/her actions, lacks sufficient commonality of interest with the municipality itself, such that a plaintiff should be excused for failing to specifically name that individual.

Although the two *Schafer* factors indicate that the exception to the named respondent rule should not apply to this case, the four factors articulated in *Glus* (the predecessor case to *Schafer*) must be considered. An analysis of these factors also supports the conclusion that the exception does not apply. The four *Glus* factors are:

1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted

in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Glus*, 562 F.2d 880, 888.

The first *Glus* factor—ascertainability of unnamed parties—supports defendants because plaintiffs could have easily ascertained the names of the individual council members and included them in the EEOC complaint. Plaintiffs did so in the complaint before this court. *See, e.g., Harman v. York City Sch. Dist.*, 1:12-CV-02033, 2013 WL 3242407, at *5  (M.D. Pa. June 25, 2013) (finding first *Glus* factor weighed against plaintiff, because defendant "served on the District's school board, and, therefore, Plaintiff knew his role and could have named him…"). The second *Glus* factor—similarity of interests—supports defendants as already explained in the discussion of *Schafer*'s "commonality of interest" inquiry. The third *Glus* factor—prejudice— also supports defendants. Defendants were prejudiced because they did not receive notice of the individual capacity claims against them and were thus deprived of the opportunity to informally resolve these claims via the administrative process. *See, e.g.*, *Meyers v. California Univ. of Pennsylvania*, No. 2:12-CV-1258, 2013 WL 795059, at *13 (W.D. Pa. Mar. 4, 2013) (defendant "was actually prejudiced due to his absence from the administrative process because he was deprived of the opportunity to informally resolve the claims Plaintiff now asserts"); *see also Lightcap-Steele v. KidsPeace Hosp., Inc.,* No. 05-02578, 2006 WL 1147476, at *7 (E.D. Pa. Apr. 27, 2006) (noting that actual prejudice hypothetically might result from "the loss of the opportunity to clear [one's] name of allegations of wrongdoing before experiencing the arguable ignominy of being individually named in a public law suit"). Finally, the fourth factor—indirect representation—does not apply because plaintiffs do not allege that defendants represented to plaintiffs that defendants' relationships to plaintiffs should be through the Borough.

Plaintiffs have thus failed to exhaust administrative remedies as to individual Council Members other than Pray. I will therefore grant defendants' motions to dismiss plaintiffs' PHRA claims against Council Members Mueser, Thomas, Williams, VanAuken, Coles, Booker, Moore, Walden, and Mujahid, in their individual capacities.

With respect to Defendant Pray, Colwyn Defendants put forth several additional arguments, other than exhaustion of remedies, for why the PHRA claims should be dismissed, including claims for legislative and "high public official" immunity and claims that Pray cannot be found liable for aiding and abetting under the PHRA because she is not a supervisory employee. These arguments are unavailing. Therefore, I will deny Colwyn Defendants' motion to dismiss plaintiffs' PHRA claims against Pray.

### C. Cizmarik's Title VII, ADA, and PHRA Claims Against the Borough

Defendant Borough moves to dismiss Cizmarik's PHRA, Title VII, and ADA claims against the Borough on the grounds that Cizmarik fails to state a hostile work environment claim. I will deny Colwyn Defendants' motion to dismiss these claims, because Cizmarik has alleged sufficient factual content to survive a motion to dismiss.

### D. Motion to Strike Punitive Damages

Defendants also move to strike plaintiffs' claims for punitive damages under the PHRA and under § 1981, via § 1983. Defendants seek to strike these claims on the grounds that: (1) punitive damages are unavailable under the PHRA; (2) punitive damages are unavailable under § 1983 against a municipality or individuals in their official capacities; and (3) plaintiffs have not pled sufficient factual basis for punitive damages under § 1983 with respect to council members in their individual capacities, with the exception of Pray. Plaintiffs agree that punitive damages are unavailable for PHRA claims and § 1983 claims against the Borough or individuals in their

official capacities. I will thus grant Colwyn Defendants' motion to strike punitive damages as to all PHRA claims, and as to claims for municipal liability under § 1981, via § 1983.

With respect to plaintiffs' § 1981, via § 1983 claims against Defendant Council Members in their individual capacities, defendants argue that plaintiffs have not pled sufficient factual basis for punitive damages, except with respect to Pray. Plaintiffs assert, however, that, if their allegations are true, the facts could support a finding of recklessness and callous disregard as required for punitive damages. As pled, plaintiffs' claims could potentially support a claim for punitive damages. Therefore I will deny Colwyn Defendants' motion to strike punitive damages as to plaintiffs' individual-capacity claims under § 1983.

## IV. CONCLUSION

I will grant Defendant Mueser's motion to dismiss plaintiffs' PHRA Claims against him in his individual capacity, because plaintiffs have failed to exhaust administrative remedies under the PHRA. For the same reason, I will also grant Colwyn Defendants' motion to dismiss plaintiffs' PHRA Claims as to all Defendant Council Members, except Pray. To the extent that plaintiffs bring their § 1981 claims against Defendant Council Members in their official capacities, I will dismiss these claims as duplicative of plaintiffs' § 1981 claims directly against the Borough. I will deny the remainder of both Defendant Mueser's and Colwyn Defendants' motions to dismiss, because I find that plaintiffs have sufficiently stated plausible claims as to all remaining counts.

I will grant Colwyn Defendants' motion to strike punitive damages as to plaintiffs' PHRA claims, and as to plaintiffs' § 1981, via § 1983 claims against the Borough and defendants in their official capacities. However, I will deny Colwyn Defendants' motion to strike punitive

damages as to plaintiffs' § 1981, via § 1983 claims against Council Members in their individual capacities.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:          Copies **MAILED** on _____ to: